## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DAMIAN PERRY,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:23-cv-00848** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **JOHN DOE SUPERVISING** | : | |
| **LIEUTENANT USP LEWISBURG, <u>et al.</u>,** | : | |
| **Defendants** | : | |

### <u>MEMORANDUM</u>

<u>Pro se</u> Plaintiff Damian Perry ("Plaintiff"), a prisoner in the custody of the Federal

Bureau of Prisons ("BOP"), has commenced the above-captioned action by filing a complaint

pursuant to <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 U.S. 388 (1971).  He asserts

that, while he was incarcerated at United States Penitentiary Lewisburg ("USP Lewisburg") in

Lewisburg, Pennsylvania, the Defendants used excessive force against him in violation of his

Eighth Amendment rights.  (Doc. No. 1.)  In accordance with the Prison Litigation Reform Act,[1]

the Court has conducted an initial review of Plaintiff's complaint.  For the reasons set forth

below, the Court will grant Plaintiff leave to proceed <u>in forma pauperis</u>, dismiss his complaint

for failure to state a claim upon which relief may be granted, and deny as moot his motion

seeking the appointment of counsel.

---

[1]  <u>See</u> The Prison Litigation Reform Act of 1995, Pub. L. No. 104–134, 110 Stat. 1321 (Apr. 26, 1996).

## I.      BACKGROUND

On May 23, 2023, Plaintiff filed his complaint (Doc. No. 1), as well as a motion for leave to proceed in forma pauperis (Doc. No. 2), his prisoner trust fund account statement (Doc. No. 3), and a motion seeking the appointment of counsel (Doc.  No. 4).  Having reviewed his motion for leave to proceed in forma pauperis and his prisoner trust fund account statement, the Court will grant him in forma pauperis status and deem his complaint filed.

In his complaint, Plaintiff alleges that the events giving rise to his Eighth Amendment excessive use of force claim occurred on November 23, 2021, at USP Lewisburg.  (Doc. No. 1 at 4.)  Plaintiff names as the Defendants four (4) unidentified individuals, all of whom appear to be employed by the BOP and work at USP Lewisburg.  (Id. at 1–3.)  More specifically, he names three (3) correctional officers and one supervising lieutenant.  (Id.)  In addition, he asserts the following allegations against these Defendants.

Plaintiff alleges that he was being escorted "from quarantine to R&D" because he was being transferred from USP Lewisburg to a Federal Correctional Institution in Ray Brook, New York, where he is currently incarcerated.  (Id. at 4.)  Plaintiff contends that he was being escorted with other inmates, who "were talking[,]" and that the "[t]he Lieutenant got irritated and stated 'shut the fuck up[,]'" but the inmates "continued to talk."  (Id.)

In addition, Plaintiff alleges that "[t]he Lieutenant" asked him for his name and wrote it down.  (Id.)  Plaintiff further alleges that a correctional officer stated to him that he has a "smart mouth" and that he was the one who was "bad mouthing [the] Lieutenant."  (Id.)  Plaintiff contends that, although he denied doing so, two (2) correctional officers escorted him to a bus, where they "horse collared Plaintiff and slammed him head first [sic] into one of the windows[, and] began punching Plaintiff viciously in his ribs and calling him derogatory names."  (Id.)  As

a result of this incident, Plaintiff asserts that he suffered soreness, swelling, and "major discomfort to forehead, right temple, left wrist[,] and right flank." (Id. at 5.)

Based upon these allegations, Plaintiff claims that these correctional officers used excessive force against him in violation of his Eighth Amendment rights. (Id.) Plaintiff also claims that another "Defendant" witnessed these correctional officers using such excessive force, but did not correct it and, instead, encouraged it, also in violation of his Eighth Amendment rights. (Id.) As for relief, Plaintiff seeks compensatory and punitive damages against all Defendants. (Id.)

Attached to Plaintiff's complaint are four (4) exhibits. (Doc. Nos. 1-1 through 1-4.) Specifically, Plaintiff has attached: (1) a BOP Health Services Clinical Encounter report, which is dated November 24, 2021; (2) an affidavit that Plaintiff executed in connection with what appears to be an internal investigation; (3) an informal resolution form that Plaintiff purportedly submitted to prison officials at Federal Correctional Institution Ray Brook in New York; and (4) administrative remedy rejection notices. (Id.)

In accordance with the legal standard set forth below, the Court finds that Plaintiff's complaint fails to state an Eighth Amendment excessive use of force claim upon which relief can be granted. As a result, the Court will dismiss the complaint.

II.    **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, federal district courts must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1). District courts have a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis and prisoners challenging prison conditions.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . ."); 42 U.S.C. § 1997e(c)(1) ("The [C]ourt shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility if the [C]ourt is satisfied that the action . . . fails to state a claim upon which relief can be granted.").

In dismissing claims under §§ 1915(e), 1915A, and 1997e, district courts apply the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To avoid dismissal under Rule 12(b)(6), a civil complaint must set out "sufficient factual matter" to show that its claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a

4

complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id. at 679; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a motion to dismiss.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

Based on this standard, the United States Court of Appeals for the Third Circuit has identified the following steps that a district court must take when reviewing a Rule 12(b)(6) motion: (1) identify the elements that a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint that are "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  In addition, in the specific context of pro se prisoner litigation, a district court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976).  A pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).

III.    **DISCUSSION**

    A.    <u>**Bivens**</u>

"In 1871, Congress passed a statute that was later codified at Rev. Stat. § 1979, 42 U.S.C. § 1983." <u>Ziglar v. Abbasi</u>, 582 U.S. 120, 130 (2017) ("<u>Abbasi</u>"). This statute "entitles an injured person to money damages if a state official violates his or her constitutional rights." <u>See</u> <u>id.</u> Congress, however, "did not create an analogous statute for federal officials." <u>See</u> <u>id.</u> In other words, Congress did not provide a money damages remedy for persons whose constitutional rights were violated by federal officials. <u>See</u> <u>id.</u>

One-hundred (100) years later in 1971, the United States Supreme Court ("Supreme Court") decided <u>Bivens</u>. <u>See</u> <u>id.</u> In that case, the Supreme Court held that there is an implied cause of action for money damages when a federal official, "acting under color of his authority, conducts an unreasonable search and seizure in violation of the Fourth Amendment." <u>See</u> <u>Shorter v. United States</u>, 12 F.4th 366, 371 (3d Cir. 2021) (citing <u>Bivens</u>, 403 U.S. at 389, 397). The Supreme Court recognized that "the Fourth Amendment does not in so many words" provide for an award of money damages as a consequence of its violation, but nevertheless explained that, "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." <u>See</u> <u>Bivens</u>, 403 U.S. at 396 (citation and internal quotation marks omitted).

In the decade following <u>Bivens</u>, the Supreme Court implied a cause of action for money damages pursuant to <u>Bivens</u> in two (2) other contexts: one under the Fifth Amendment's Due Process Clause for gender discrimination in the employment context, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228, 248–49 (1979); and the other under the Eighth Amendment's Cruel and Unusual

Punishment Clause in the prison medical care context, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14, 23–25 (1980).  <u>See</u> <u>Bistrian v. Levi</u>, 912 F.3d 79, 89 (3d Cir. 2018); <u>Shorter</u>, 12 F.4th at 371.

In 2017, however, the Supreme Court "made clear" in <u>Abbasi</u> that any further expansion of <u>Bivens</u> "is now a disfavored judicial activity."  <u>See</u> <u>Abbasi</u>, 582 U.S. at 135 (citation and internal quotation marks omitted); <u>Hernandez v. Mesa</u>, 140 S. Ct. 735, 741 (2020) (explaining that, after the Supreme Court's decisions in <u>Davis</u> and <u>Carlson</u>, "the Court changed course"); <u>Mack v. Yost</u>, 968 F.3d 311, 318 (3d Cir. 2020) (explaining that "the Supreme Court has consistently refused to expand <u>Bivens</u> actions beyond these three specific contexts"—<u>i.e.</u>, <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> (footnote omitted)).

Thus, in order to curb any further expansion of <u>Bivens</u>, the Supreme Court has established a rigorous two (2)-part inquiry for courts to follow when determining whether a <u>Bivens</u> action should be extended to a new context.  <u>See</u> <u>Bistrian</u>, 912 F.3d at 89–90 (citing <u>Abbasi</u>, 582 U.S. at 139–40); <u>Shorter</u>, 12 F.4th at 372.  More specifically, courts must first determine "whether a case presents a new <u>Bivens</u> context" by asking "[i]f the case is different in a meaningful way from previous <u>Bivens</u> cases decided by [the Supreme] Court[.]"  <u>See</u> <u>Abbasi</u>, 582 U.S. at 139.  "If a case does not present a new <u>Bivens</u> context, the inquiry ends there, and a <u>Bivens</u> remedy is available."  <u>Shorter</u>, 12 F.4th at 372 (citation omitted).

If, however, a case presents a new <u>Bivens</u> context, then courts must next determine "whether any 'special factors counsel[ ] hesitation'" in permitting an extension of the doctrine. <u>See</u> <u>id.</u> (quoting <u>Abbasi</u>,582 U.S. at 135–36).  "There may be many such factors, but two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles."  <u>Bistrian</u>, 912 F.3d at 90 (citing <u>Abbasi</u>, 582 U.S. at 140-46).  Other factors include:

> the potential cost to the government of recognizing a private cause of action,
> both financially and administratively; whether the judiciary is well suited to

weigh those costs; the necessity to deter future violations; whether Congress
has already acted in that arena, suggesting it does not want the Judiciary to
interfere; whether a claim addresses individual conduct or a broader policy
question; whether litigation would intrude on the function of other branches of
government; and whether national security is at stake.

See id. (citation and internal quotation marks omitted).

More recently, however, on June 8, 2022, the Supreme Court decided Egbert v. Boule,
142 S. Ct. 1793 (2022). In that case, the Supreme Court clarified the framework that courts are
to use before implying a cause action for money damages in a new Bivens context. In particular,
the Supreme Court recognized its precedents that describe the two (2)-part inquiry, but explained
that these two (2) parts "often resolve to a single question: whether there is any reason to think
that Congress might be better equipped to create a damages remedy." See id. at 1803. The
Supreme Court further explained that, "[i]f there is even a single reason to pause before applying
Bivens in a new context, a court may not recognize a Bivens remedy." See id. (citation and
internal quotation marks omitted)).

Thus, the outcome of Egbert is—essentially—that extending a Bivens remedy to a new
context will be unavailable in all but the most unusual of cases. See id. (instructing that "[i]f
there is a rational reason" to think that Congress is better equipped to create a damages remedy,
"as it will be in most every case, . . . no Bivens action may lie"). In other words, the Supreme
Court has "all but closed the door on Bivens remedies." See Dyer v. Smith, 56 F.4th 271, 277
(4th Cir. 2022) (citation omitted).

### 1.     New Context

As discussed above, Plaintiff asserts a <u>Bivens</u> claim based upon allegations that excessive force was used on him by some of the Defendants, and encouraged to be used on him by at least one other Defendant, in violation of his Eighth Amendment rights.  (Doc. No. 1 at 4–5.)   As set forth above, a <u>Bivens</u> claim arises in a new context when the case is "different in a meaningful way from previous <u>Bivens</u> cases decided" by the Supreme Court.  <u>See Abbasi</u>,  582 U.S. at 139. Here, however, the Court finds that Plaintiff's claim "bear[s] little resemblance" to the three (3) <u>Bivens</u> claims that the Supreme Court "has approved in the past:" (1) a Fourth Amendment "claim against FBI agents for handcuffing a man in his own home without a warrant;" (2) a Fifth Amendment "claim against a Congressman for firing his female secretary;" and (3) an Eighth Amendment "claim against prison officials for failure to treat an inmate's asthma."  <u>See id.</u> at 140. (citations omitted).

Although <u>Bivens</u> itself concerned an excessive use of force claim, that claim was asserted under the Fourth Amendment and not the Eighth Amendment.  Similarly, although <u>Carlson</u> involved an Eighth Amendment claim, that claim stemmed from allegations of inadequate prison medical care and not allegations of excessive use of force.  Thus, while Plaintiff's case arguably shares broad similarities with <u>Bivens</u> and <u>Carlson</u>, such broad similarities will be insufficient to support the Court extending <u>Bivens</u> to this new context.  <u>See Egbert</u>, 142 S. Ct. at 1805 (explaining that "almost parallel circumstances" or "superficial similarities" with <u>Bivens</u>, <u>Davis</u>, and <u>Carlson</u> "are not enough to support the judicial creation of a cause of action" (citation and internal quotation marks omitted)).

Thus, for all of these reasons, the Court concludes that Plaintiff's <u>Bivens</u> claim arises in a new context.

2.      **Special Factors**

Because Plaintiff's <u>Bivens</u> claim arises in a new context, the Court must determine under

<u>Abbasi</u> and <u>Egbert</u> whether there are any special factors that counsel hesitation in the Court

extending a <u>Bivens</u> remedy to this claim.  <u>See Egbert</u>, 142 S. Ct. at 1803.  Ultimately, the Court

finds that there are special factors that counsel such hesitation here.

As explained by the Supreme Court, a special factor suggests that Congress is better

equipped than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy.

<u>See Egbert</u>, 142 S. Ct. at 1803 (citation and internal quotation marks omitted).  Although various

special factors may be considered, "two are particularly weighty: the existence of an alternative

remedial structure and separation-of-powers principles."  <u>See Bistrian</u>, 912 F.3d at 90 (citation

omitted); <u>Abbasi</u>, 582 U.S. at 135 (stating that "[s]eparation-of-powers principles are or should

be central to the analysis").  If "there is <u>any</u> rational reason (even one) to think that <u>Congress</u> is

better suited to 'weigh the costs and benefits of allowing a damages action to proceed[,]'" then

the Court cannot imply a cause of action for damages under <u>Bivens</u>.  <u>See Egbert</u>, 142 S. Ct. at

1805 (emphasis in original) (citation and internal quotation marks omitted).

Here, the Court finds that there are special factors that weigh against extending a <u>Bivens</u>

remedy to Plaintiff's Eighth Amendment excessive use of force claim.  Initially, the Court finds

that the BOP's Administrative Remedy Program provides an alternative process for addressing

Plaintiff's Eighth Amendment excessive use of force claim.  <u>See Corr. Servs. Corp. v. Malesko</u>,

534 U.S. 61, 68 (2001) (holding that "administrative review mechanisms" can provide

"meaningful redress and thereby foreclose[ ] the need to fashion a new, judicially crafted cause of

action[,]" even if those mechanisms do not "fully remedy the constitutional violation . . . "); <u>see</u>

<u>also</u> 28 C.F.R. § 542.10(a) (providing that "[t]he purpose of the Administrative Remedy Program

is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"). Indeed, and as instructed by the Supreme Court, alternative remedies for aggrieved parties "independently foreclose a <u>Bivens</u> action." <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1806; <u>Malesko</u>, 534 U.S. at 69 (stating that, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability" (citation omitted)). Thus, "when alternative methods of relief are available," as they are here, "a <u>Bivens</u> remedy usually is not." <u>See</u> <u>Abbasi</u>, 582 U.S. at 145.

In addition, the Court finds that "the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action" in the context of the excessive use of force in federal prisons. <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1805. The Supreme Court has generally acknowledged that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the <u>legislative</u> and <u>executive</u> branches of government[,]" and that this "task that has been committed to the responsibility of <u>those</u> branches, and separation of powers concerns counsel a policy of judicial restraint." <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 84–85 (1987) (emphasis added) (internal citation and internal quotation marks omitted). Thus, extending a <u>Bivens</u> remedy to this new context "would step well into the lawmaking privilege delegated only to Congress, and well over the bounds of [the Court's] limited constitutional power." <u>See</u> <u>Mammana v. Barben</u>, 856 F. App'x 411, 415 (3d Cir. 2021) (unpublished) (setting forth this principle in the context of a <u>Bivens</u> claim based upon allegedly unconstitutional conditions of confinement in violation of the Eighth Amendment).

Additionally, the Court finds that "recognizing a <u>Bivens</u> remedy [here] would likely cause an increase of suits by inmates, increased litigation costs to the government, and . . . burdens on individual prison employees to defend such claims."  <u>See</u> <u>Bistrian</u>, 912 F.3d at 95 (citation and internal quotation marks omitted).  "Heeding the reasoning in <u>Abbasi</u>, [courts] must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'"  <u>Id.</u> (quoting <u>Abbasi</u>, 582 U.S. at 136); <u>Egbert</u>, 142 S. Ct. at 1800 (stating that Supreme Court precedent has "made clear that, in all but the most unusual circumstances," a <u>Bivens</u> remedy should not be recognized in new contexts).

Thus, for all of these reasons, the Court concludes, as other courts in this District have, that special factors counsel hesitation in extending a <u>Bivens</u> remedy to a plaintiff's Eighth Amendment excessive use of force claim.  <u>See</u> <u>Landis v. Moyer</u>, 610 F. Supp. 3d 649, 659–60 (M.D. Pa. 2022) (concluding that special factors weighed against extending a <u>Bivens</u> remedy to the prisoner-plaintiff's cause of action, where he alleged that a BOP senior officer used excessive force against him in violation of his Eighth Amendment rights); <u>Bone v. Ebbert</u>, No. 19-cv-00112, 2022 WL 943036, at *8–9 (M.D. Pa. Mar. 29, 2022) (finding that special factors counseled against an extension of <u>Bivens</u> to the prisoner-plaintiff's claim that BOP defendants used excessive force against him in violation of the Eighth Amendment).

In sum, the Court concludes that Plaintiff's Eighth Amendment excessive use of force claim arises in a new <u>Bivens</u> context and that there are sound reasons to find that Congress is better positioned than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed" here.  <u>See</u> <u>Egbert</u>, 142 S. Ct. at 1803 (citation and internal quotation marks omitted).  Accordingly, because there are such reasons to defer to Congress, the Court will refrain from extending a <u>Bivens</u> remedy to Plaintiff's claim.  <u>See</u> <u>id.</u> (instructing that "even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy" (citation and internal quotation marks omitted)).  Therefore, the Court will dismiss Plaintiff's Eighth Amendment excessive use of force claim.

### B.      Leave to Amend

The final issue is whether Plaintiff should be granted leave to amend his complaint.  Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a Court dismisses a claim that is merely deficient.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002).  The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits."  <u>See</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (citation and internal quotation marks omitted).

However, the Court may deny leave to amend where there is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment[.]"  <u>See</u> <u>id.</u>  The Court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended,

would fail to state a claim upon which relief could be granted."  See In re NAHC, Inc. Sec.

Litig., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and internal quotation marks omitted).

In accordance with this standard, the Court concludes that amendment would be futile

here.  No amendment could remedy the legal deficiencies that the Court has identified in

Plaintiff's complaint.  Thus, the Court will dismiss Plaintiff's complaint without leave to amend.

## IV.   CONCLUSION

Accordingly, for all of the foregoing reasons, the Court will grant Plaintiff leave to

proceed in forma pauperis, dismiss his complaint for failure to state a claim upon which relief

may be granted, and deny as moot his motion seeking the appointment of counsel.  An

appropriate Order follows.